RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

AMY MATCHISON (CABN 217022)
Trial Attorney
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6422
Fax: (202) 307-0054
E-mail: Amy.T.Matchison@usdoj.gov
Western.Taxcivil@usdoj.gov

DAVID L. ANDERSON
United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>FRANCIS BURGA; FRANCIS BURGA AS THE ADMINISTRATOR OF THE ESTATE OF MARGELUS BURGA; and RUSSELL MANSKY,<br><br>Respondents. | Case No. 5:18-cv-01633-BLF<br><br>**UNITED STATES' BRIEF CHALLENGING RESPONDENTS' ASSERTIONS OF PRIVILEGE**<br><br>Date: November 7, 2019<br>Time: 9:00 a.m.<br>Judge: Honorable Beth L. Freeman<br>Courtroom: 3, 5th Floor |

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... **1**

**II. BACKGROUND** .......... **1**

**III. ARGUMENT** .......... **3**

A. Respondents Have Improperly Withheld Documents Based on a Joint Defense Agreement .......... 3

B. Respondents Have Improperly Withheld Documents Shared with Michael Kind and Rosa Prete .......... 5

C. Respondents Have Not Established the Elements of the Tax Practitioner Privilege .......... 7

D. Respondents Have Improperly Withheld Documents Based on a Kovel Agreement .......... 8

**IV. CONCLUSION** .......... **10**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120 (3d Cir.1986) ........ 3, 4

*Cavallaro v. United States*, 284 F.3d 236 (1st Cir. 2002) ........ 4

*In re Fischel*, 557 F.2d 209 (9th Cir. 1977) ........ 5, 9

*Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13 (D.D.C. 2005) ........ 3, 5

*In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012) ........ 3, 4, 5

*Tom Gonzales v. United States*, No. 08-cv-03189, 2010 WL 1838948 (N.D. Cal. May 4, 2010) ........ 4, 5

*United States v. Abrahams*, 905 F.2d 1276 (9th Cir. 1990) ........ 5, 6

*United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) ........ 9

*United States v. BDO Seidman, LLP*, 492 F.3d 806 (7th Cir. 2007) ........ 4

*United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........ 9

*United States v. Flores*, 628 F.2d 521 (9th Cir. 1980) ........ 5

*United States v. Frederick*, 182 F.3d 496 (7th Cir.1999) ........ 7, 10

*United States v. Gurtner*, 474 F.2d 297 (9th Cir. 1973) ........ 8, 9

*United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) ........ 5

*United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) ........ 8

*United States v. McEligot*,
No. 14-cv-05383, 2015 WL 1535695 (N.D. Cal. Apr. 6, 2015) ........ 8

*United States v. Schwimmer*,
892 F.2d 237 (2d Cir. 1989) ........ 3

*Valero Energy Corp. v. United States*,
569 F.3d 626 (7th Cir. 2009) ........ 8

*Weil v. Investment/Indicators, Research and Management, Inc.*,
647 F.2d 18 (9th Cir. 1981) ........ 6

**Statutes**

26 U.S.C. § 7525 ........ 8

26 U.S.C. § 7525(a)(3)(B) ........ 7

## I. INTRODUCTION

Since the Court ordered enforcement of the IRS's six summonses in this matter, the parties have worked towards resolving their disagreements over the production of responsive information and the assertions of privilege. While efforts at production remain ongoing, the United States has distilled its objections to many of respondents' assertions of privilege into several distinct questions that require judicial resolution. First, Ms. Burga has asserted that a large swath of responsive documents are protected from disclosure by a joint defense agreement she signed on behalf of her husband and his estate, at the request of Liechtenstein citizen, Peter Meier. But, she has failed to convincingly articulate what common legal interest her late husband's estate shares with Mr. Meier and how the withheld documents advanced some common legal strategy. Next, she claims that the joint defense agreement also shields communications that included associates of Mr. Meier: Michael Kind and Rosa Prete. Neither Mr. Kind nor Ms. Prete are counsel for Mr. Meier and none of their communications are privileged in the first instance. Accordingly, the inclusion of these third parties waived any privilege that might have otherwise attached to any communication to which they were a part. Finally, despite Ms. Burga's accountant, Russell Mansky's repeated admissions that he only prepared tax returns in this matter, respondents persist in claiming his communications are shielded from disclosure by either the tax practitioner privilege or a Kovel agreement. Regardless of any agreement executed between Mr. Mansky and counsel for Ms. Burga, Mr. Mansky's testimony has been consistent – he has only prepared tax returns. Mr. Mansky did not provide tax legal advice and he did not provide assistance to Ms. Burga's counsel so that they could provide her legal advice.

These dubious privilege claims account for the majority of the documents identified on respondents' revised logs and withheld from the IRS. None of these assertions of privilege has merit and the IRS is entitled to review the withheld material. Accordingly, the United States requests that the Court order respondents to produce the documents so identified in their revised logs to the IRS.

## II. BACKGROUND

The IRS examination of Margelus and Francis Burga began in 2007. (Dkt. No. 1-2, ¶ 21, First Declaration of Kevan Mullins). At the outset, Mr. Burga told the IRS that neither he nor his wife had any trusts, foreign bank accounts, or foreign companies. (*Id.* at ¶ 41). At the time, the IRS knew about

the existence of just a few foreign entities that it believed were connected to the Burgas. In time, the IRS would learn that the Burgas had created a large and complex international structure of businesses that they used to divert income. (*Id.* at ¶ 23). The IRS would also later learn that the same day in 2007 Mr. Burga made his initial statement to the IRS that he had no foreign accounts, he also instructed that all of the securities held in his Swiss UBS account, held jointly with Ms. Burga, be transferred to an overseas trust he controlled. (*Id.* at ¶ 41).

Mr. Burga died in Switzerland in January 2010. (Dkt. No. 1-6 at 1). Shortly thereafter and while still in Switzerland, Ms. Burga was made the protector of the Marfran *stiftung* (a Liechtenstein entity that held some of the Burgas' assets). (Declaration of Amy Matchison, ¶ 2, Exhibit A). Ms. Burga claims she only learned of the vast offshore structures, from which she benefitted for over a decade, after the death of her husband. (Dkt No. 1-6 at 1). Similarly, she claims she knew nothing of the IRS's examination of her and her husband's tax returns until after his death. (*Id.*).

Following Mr. Burga's death, Francis Burga continued both the lucrative businesses she and her husband created as well as the complex international structures they established to divert profits and income from the United States. In June 2010, Ms. Burga traveled with her counsel Emily Kingston to Liechtenstein to meet with Peter Meier and his counsel, Siegbert Lampert. (Dkt No. 1-6 at 2). It was during this meeting that Mr. Meier requested a joint defense agreement. (Matchison Decl., ¶ 2, Ex. A). The Joint Defense and Information Sharing Agreement was signed by Peter Meier and Francis Burga, on behalf of her husband and his estate, on June 26, 2010. (Dkt. No. 12-2). Mr. Meier is identified in Ms. Burga's revised privilege log as a "Liechtenstein Banker and Director of Foreign Structures." (Matchison Decl., ¶ 3, Ex. B). Ms. Burga also identified that she "has a common legal interest with Mr. Meier, as trustee of the foundations, in defending against the IRS audits and seeing that proper and legal tax assessments, if any, are made against Mrs. Burga and Mr. Burga's estate." (*Id.*, Exs. B and C).

Michael Kind is identified in Ms. Burga's revised log as an "Accountant for Peter Meier in Liechtenstein," and Rosa Prete is identified as an "Assistant to Peter Meier in Liechtenstein." (Matchison Decl., ¶ 3, Ex. B). Ms. Burga has further described Mr. Kind's role as "an accountant who Mr. Meier retained to assist in reviewing and preparing financial information regarding the foundations and their underlying entities as part of responding to the IRS audit and to assist with compliance with

U.S. tax reporting requirements." (Matchison Decl., ¶ 2, Ex. A). In addition, Ms. Burga has offered that Ms. Prete "has assisted Mr. Meier and Mr. Lampert with the foundations and their underlying entities and with respect to the IRS audit and communications with Ms. Burga and her lawyers and accountants."[1] (*Id.*).

In September 2010, Mr. Mansky executed a Kovel agreement with Sideman Bancroft. (Dkt. Nos. 9-1, 12-3). Despite that agreement, he has admitted that he "was specifically retained to review and, if necessary and/or possible amend the 2001 through 2009 tax returns. I was also retained to prepare returns for 2010 onward." (Dkt. No. 9-1, Mansky Decl., at ¶ 4).

## III. ARGUMENT

### A. Respondents Have Improperly Withheld Documents Based on a Joint Defense Agreement

The common interest doctrine prevents, in certain circumstances, the waiver of an underlying privilege (typically the attorney-client privilege) when the client voluntarily discloses protected information to a third party. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). This doctrine is not an independent, freestanding privilege, but rather extends an underlying privilege where a qualifying common interest exists. *Id*. All material withheld on the basis of a common interest or joint defense agreement claim must therefore first satisfy the traditional requirements for privilege. *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005). "Once these requirements are satisfied, shared or jointly created material must pass an additional test: It must be disclosed pursuant to a common legal interest and pursuant to an agreement to pursue a joint defense." *Id.* In this case, the relevant underlying privileges claimed are attorney client, tax practitioner, work product, and a Kovel Agreement.

The party asserting the common interest privilege has the burden of establishing that it applies in a particular instance. *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989); *In re Bevill,*

[1] This description of Ms. Prete's work for Mr. Meier is at odds with how her name appears in the documents produced by Ms. Burga and reviewed by the government. For example, Ms. Prete appears as a corporate officer for a couple of the overseas entities (Jonax and Huritiga), as an employee of Doree, and affiliated with IPC Management Trust. (Third Declaration of Kevan Mullins, ¶ 6).

*Bresler & Schulman Asset Management*, 805 F.2d 120, 126 (3d Cir.1986). The common interest privilege arises where there is a "shared common interest about a legal matter," for example where "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel," and communications between the parties are "made in the course of an ongoing common enterprise and intended to further the enterprise." *Id.*; *see Tom Gonzales v. United States,* No. 08-cv-03189, 2010 WL 1838948 (N.D. Cal. May 4, 2010). In the civil context, a mere "shared desire to see the same outcome in a legal matter is insufficient to trigger the doctrine." *In re Pacific Pictures*, 679 F.3d at 1129; *see, e.g., United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007) (in a tax summons enforcement matter, holding that "the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest"); *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002) (same). Respondents have failed to meet their burden and show that "the parties" to the agreement have a common legal interest, that the withheld communications and documents were made in the course of that ongoing common enterprise, that the statements were designed to further the effort, and that the privilege was not waived.

It is not clear from the face of the Joint Defense and Information Sharing Agreement what the purpose and scope of the agreement is, nor what might be the nature of the common legal interest between the parties. (Dkt No. 12-1, Second Mullins Decl. Ex. I). The agreement is signed by Ms. Burga and Peter Meier, and their counsel, in connection with the IRS inquiry "with respect to Margelus Burga and/or the estate of Margelus Burga, and related businesses and entities." (*Id.*). In response to the government's requests for greater explanation of the common legal interest claimed, Ms. Burga has only offered that she "has a common legal interest with Mr. Meier, as trustee of the foundations, in defending against the IRS audits and seeing that proper and legal tax assessments, if any, are made against Mrs. Burga and Mr. Burga's estate." (Matchison Decl., ¶ ¶ 2, 3, Exs. B and C). But, this explanation falls short. Ms. Burga signed the agreement on behalf of her husband and his estate, not in her personal capacity. Furthermore, the agreement was entered into at the request of Mr. Meier, not Ms. Burga. Based on Ms. Burga's revised privilege log, Mr. Meier is known to the government as a "Liechtenstein Banker and Director of Foreign Structures." (Matchison Decl., ¶ 2, Ex. B). In addition, counsel for Ms. Burga refers to him as a friend of Margelus Burga who's in Liechtenstein. (Dkt. No. 6,

Declaration of Emily Kingston, ¶ 5). There is nothing to indicate, and it is not apparent, that he and Ms. Burga share a common legal interest insomuch as an examination of Mr. Burga is concerned. Mr. Meier may have knowledge that might be helpful and or necessary to Ms. Burga in the course of the IRS's examination, but that is not a legal interest. Indeed, Peter Meier has no legal interest in the outcome of the IRS's examination.

And, even if Mr. Meier and Ms. Burga share a common desire to avoid a tax liability being assessed against the Burgas, that is not sufficient to invoke the doctrine. *See In re Pacific Pictures,* 679 F.3d at 1129; *see also Gonzales*, No. 08-cv-03189, 2010 WL 1838948, at *4. At the close of its examination, the IRS may assess income tax and penalties against Mr. and Ms. Burga, but it cannot make any similar assessments against Mr. Meier nor would he be liable for any of the assessments made against the Burgas. Accordingly, the parties lack a common legal interest and cannot invoke the doctrine to shield their communications.[2] The IRS is entitled to review the material improperly withheld on the basis of the joint defense agreement.

### B. Respondents Have Improperly Withheld Documents Shared with Michael Kind and Rosa Prete

As discussed, the joint defense rule or common interest doctrine is not its own separate privilege, but is instead an exception to the ordinary rules on waiver. *In re Pacific Pictures*, 679 F.3d at 1129. As such, respondents must demonstrate that all material withheld on the basis of the joint defense agreement first satisfies the traditional requirements for privilege. *Minebea Co., Ltd.*, 228 F.R.D. at 16. For example, under the attorney-client privilege, the protection accorded to communications by a *client* to an *attorney* is limited to "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams*, 905 F.2d 1276, 1283 n. 10 (9th Cir. 1990), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997); *United States v. Flores,* 628 F.2d 521, 526 (9th Cir. 1980); *In re Fischel*, 557 F.2d 209, 211-12 (9th Cir. 1977).

[2] After the Court has decided the questions presented, the parties should be able to narrow their privilege disputes. Accordingly, the United States is not waiving any specific challenges to respondents' revised privilege logs by raising only general objections now.

Communications by an *attorney* to a *client* are protected only if the communications "directly or indirectly reveal communications of a confidential nature by the client to the attorney." *Id.* (attorney's summaries of client's business transactions with third parties, prepared for client, were not privileged because they did not reveal confidential client communications; for privilege to apply to communications by attorney, attorney's communications "must be so interwoven with the privileged communications" as to "lead[ ] irresistibly" to disclosure of client's confidential communications.). Respondents, as the parties invoking privilege bear the burden of establishing that it applies and that it has not been waived. *Abrahams*, 905 F.2d at 1283; *see generally Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it").

Rosa Prete has been identified on Ms. Burga's revised privilege log as an "Assistant to Peter Meier in Liechtenstein." (Matchison Decl., ¶ 3, Ex. B). More recently, Ms. Burga has offered that Ms. Prete "has assisted Mr. Meier and Mr. Lampert with the foundations and their underlying entities and with respect to the IRS audit and communications with Ms. Burga and her lawyers and accountants." (Matchison Decl., ¶ 2, Ex. A). Based on documents reviewed thus far in this matter, Ms. Prete was not Mr. Meier's assistant but instead was a corporate officer of a couple of overseas entities (Jonax and Huritiga), an employee of Doree, and affiliated with IPC Management Trust. (Third Declaration of Kevan Mullins, ¶ 6). Moreover, respondents have not shown, as they must, that Ms. Prete's inclusion on any communications is privileged in the first instance. It is not enough to say she was Mr. Meier's assistant and is therefore covered by a large umbrella of attorney-client privilege, which was extended by the joint defense agreement. Indeed, her helpfulness to Mr. Meier and Mr. Lampert does not cloak her communications in privilege – the privilege only protects confidential communications between a client and his lawyer, not communications that may be important to a lawyer's legal advice to a client. As such, the inclusion of Ms. Prete on communications waives any privilege claim. Accordingly, the IRS is entitled to review all withheld communications that include Ms. Prete.

Michael Kind has been identified on Ms. Burga's revised privilege log as an "Accountant for Peter Meier in Liechtenstein." (Matchison Decl., ¶ 3, Ex. B). Ms. Burga has further described Mr.

Kind's role as "an accountant who Mr. Meier retained to assist in reviewing and preparing financial information regarding the foundations and their underlying entities as part of responding to the IRS audit and to assist with compliance with U.S. tax reporting requirements." (Matchison Decl., ¶ 2, Ex. A). As with Ms. Prete, respondents bear the burden of showing that any communication involving Mr. Kind is privileged in the first instance.

Respondents cannot invoke the tax practitioner privilege to shield communications involving Mr. Kind from production. As relevant to Mr. Kind, "tax advice" between a federally authorized practitioner and a taxpayer can be considered privileged only "'to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.'" *United States v. Frederick*, 182 F.3d 496, 502 (7th Cir. 1999) *cert. denied*, 528 U.S. 1154 (2000) (quoting § 7525(a)(1)). "Tax advice," in turn, is defined as: "advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice described in subparagraph (A) [of § 7525(a)(3)]." 26 U.S.C. § 7525(a)(3)(B). A practitioner's authority to practice is addressed in § 7525(a)(3)(A) as a "practice before the Internal Revenue Service if such practice is subject to Federal regulation under section 330 of title 31, United States Code." It follows that the privilege applies only to advice regarding federal income taxes given by federally authorized practitioners, not to advice regarding taxes imposed and administered under any foreign tax law or given by any type of accountant or tax practitioner. It has not been made clear, but is assumed based on his description, that Mr. Kind is not a federally authorized tax practitioner. Accordingly, none of the advice provided by Mr. Kind is protected from disclosure by the tax practitioner privilege. Moreover, Mr. Kind is not a party to a *Kovel* agreement and is not included in the joint defense agreement. As such, his inclusion on any communications waived any attorney-client, tax practitioner, *Kovel*, or joint-defense privilege claimed. Accordingly, the IRS is entitled to review all withheld communications that include Mr. Kind.

### C. Respondents Have Not Established the Elements of the Tax Practitioner Privilege

In refusing to produce responsive documents involving Ms. Burga's accountant Mr. Manksy, respondents have asserted the tax practitioner privilege. (Dkt No. 1-2, First Mullins Decl., Ex. H). Under 26 U.S.C. § 7525(a)(1),

> With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a

> communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

This statutory tax practitioner privilege is "limited" and "no broader than the existing attorney-client privilege." *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009). "Nothing in the statute 'suggests that these nonlawyer practitioners are entitled to privilege when they are doing **other than lawyers' work**....'" *Id*. (quoting *Frederick*, 182 F.3d at 502 (emphasis added). Since accounting advice is not privileged (whether dispensed by an accountant or attorney), "the success of a claim of privilege depends on whether the advice given was general accounting advice or legal advice." *Id*.

> "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service, as in *Olender v. United States*, 210 F.2d 795, 805-806 (9th Cir. 1954), [*cert. denied*, 352 U.S. 982, 77 S.Ct. 382, 1 L.Ed.2d 365 (1956)], *see Reisman v. Caplin*, 61-2 U.S.T.C. ¶ 9673 (1961), or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961); *accord*, *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963).

*United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973); *see also United States v. McEligot*, No. 14-cv-05383, 2015 WL 1535695, *6 (N.D. Cal. Apr. 6, 2015).

By Mr. Mansky's own admission he was retained to prepare tax returns - not provide legal accounting advice. (Dkt. No. 9-1, Mansky Decl. ¶ 4). To the extent that communications involve Mr. Mansky they are related to return preparation and are not legal tax advice. Accordingly, respondents cannot claim that communications with Mr. Mansky are protected by the tax practitioner privilege. The IRS is entitled to review all documents involving Mr. Manksy and withheld on the basis of the tax practitioner privilege.

### D. Respondents Have Improperly Withheld Documents Based on a Kovel Agreement

Respondents have also refused to produce responsive documents based upon a Kovel agreement between counsel for Ms. Burga and Mr. Mansky. (Dkt No. 1-2, First Mullins Decl. Exs. D and H; Dkt No. 9-1, Manksy Decl. ¶ 3). In limited circumstances, the attorney-client privilege may extend to communications of such confidential information to third parties who provide assistance to the attorney that the attorney requires in order to provide legal advice. *See United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). In *Kovel*, the court illustrated this exception with the situation in which an attorney needs an

interpreter in order to understand his client's story. The court held, by analogy, that since "[a]ccounting concepts are a foreign language" to many lawyers, "the presence of an accountant . . . while the client is relating a complicated tax story to the lawyer" would not destroy the privilege if the accountant's presence was "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *Id.* at 921-22. In contrast, "[i]f what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.* at 922.

This Court has recognized that the *Kovel* exception is very narrow. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1071 (N.D. Cal. 2002) ("*Kovel* did not intend to extend the privilege beyond the situation in which an accountant was interpreting the client's otherwise privileged communications or data in order to enable the attorney to understand those communications or that client data"); *see also Gurtner*, 474 F.2d at 298-99 (no privilege where advice sought was accountant's rather than attorney's); *In re Fischel*, 557 F.2d at 211 (purpose of the privilege is to foster client's freedom of expression, "not to permit an attorney to conduct his client's business affairs in secret"); *Kovel*, 296 F.2d at 921 ("Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege.").

The *Kovel* "decision recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). The only situation in which the *Kovel* exception could cover the communications between Ms. Burga's counsel and Mr. Mansky is if Mr. Mansky was "interpreting the client's otherwise privileged communications or data in order to enable [Ms. Burga's counsel] to understand those communications or that client data." *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1071. From the information provided by respondents, it does not appear that Mr. Manksy was communicating with Ms. Burga's attorney as a *Kovel* interpreter "to improve the comprehension of the communications between attorney and client." *Ackert*, 169 F.3d at 139. Rather, Mr. Mansky admits he "was specifically retained to review and, if necessary and/or possible amend the 2001 through 2009 tax returns. I was also

retained to prepare returns for 2010 onward." (Dkt. No. 9-1, Mansky Decl., at ¶ 4). This is not a purpose giving rise to the privilege under the *Kovel* exception, regardless of the fact that Mr. Mansky and counsel for Ms. Burga executed such an agreement.

For if Ms. Burga were allowed to use the same individual who was retained to prepare, and did actually prepare, tax returns as a *Kovel* interpreter, the limited exception in *Kovel* would swallow the general rule that no privilege exists with respect to information contained on a tax return and the basis thereof. *See, e.g.*, *Frederick,* 182 F.3d at 500-01 ("The information that a person furnishes the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged."). Ms. Burga's attempted use of her tax return preparer as an alleged *Kovel* interpreter risks not only unfairly expanding the narrow *Kovel* exception to improperly protect communications about return preparation, but also risks making it difficult or impossible to determine which of the documents involving Mr. Mansky reflect unprotected communications about the return and its preparation, and which communications, if any, reflect the detached interpretation of complex accounting data contemplated by *Kovel*. Accordingly, the IRS is entitled to review all documents withheld on the basis of the Kovel agreement.

## IV. CONCLUSION

Based on the foregoing, the IRS is entitled to review documents withheld from production based on assertions of a joint defense agreement, the tax practitioner privilege, and a Kovel agreement. Furthermore, the IRS is entitled to all communications involving Ms. Prete and Mr. Kind.

Dated this 16th day of May, 2019

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Amy Matchison
AMY MATCHISON
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-4929
Email: Amy.T.Matchison@usdoj.gov

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 16th day of May, 2019, via the Court's ECF system to all users.

*/s/ Amy Matchison*
AMY MATCHISON
Trial Attorney, Tax Division
United States Department of Justice